UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHARLES EDSON R., III,

       Plaintiff,

  -v-                                                                3:20-CV-70

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

OLINSKY LAW GROUP                  HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION    LOUIS JOHN GEORGE, ESQ.
Attorneys for Defendant                   Special Ass't United States Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On January 20, 2020, plaintiff Charles Edson R., III[1] ("Charles" or "plaintiff") filed this action seeking review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision denying his application for Child's Disability Benefits ("CDB") and

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

Supplemental Security Income ("SSI"). Defendant has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that a claimant's appeal from a final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. BACKGROUND

On April 18, 2016, Charles filed an application for CDB and SSI alleging that his generalized anxiety disorder, major depressive disorder, autism spectrum disorder, obesity, short achilles tendon, severe depression, and migraines had rendered him disabled beginning on September 1, 2007. R. at 50-51, 61-62, 156-63.[2] According to plaintiff's testimony, he has extreme difficulty in social situations and with supervisors. *Id*. at 34.

Charles's claim was initially denied on July 13, 2016. R. at 72-82. At his request, a hearing was scheduled before Administrative Law Judge ("ALJ") David Romeo on December 19, 2018 in Syracuse, New York. *Id*. at 28-49. Plaintiff, represented by attorney Terry Schmidt, appeared and testified. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Joseph Atkinson. *Id*.

Thereafter, the ALJ issued a written decision denying Charles's application for benefits from April 18, 2016, the filing date, through February 4, 2019, the date of his written decision. R. at 10-19. This decision became the final decision of the Commissioner on

---

[2] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

November 19, 2019, when the Appeals Council denied plaintiff's request for review. *Id*. at 1-6.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the

ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. *Id*. §§ 404.1520(c)), 416.920(c)).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1.  If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The burden of proof with regard to these first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five.  *Perez*, 77 F.3d at 46.  This step requires the ALJ to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."  *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

As relevant here, the Social Security Act provides disability insurance benefits for a disabled adult child "on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died" if the claimant is "18 years old or older and ha[s] a disability that began before [the claimant] became 22 years old." 20 C.F.R. § 404.350(a)(5).

"In the context of determining eligibility for disabled adult child's benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases." *Doerr v. Colvin*, 2014 WL 4057446, at *3 (W.D.N.Y. Aug. 14, 2014). Accordingly, the five-step sequential evaluation applies to the plaintiff's disability claim. *See, e.g.*, *Ahearn v. Astrue*, 2010 WL 653712, at *3 (N.D.N.Y. Feb. 22, 2010) (Sharpe, J., adopting Report & Recommendation of Bianchini, M.J.).

### C. ALJ's Decision

The ALJ applied the five-step disability determination to find that: (1) Charles was younger than 22 years old as of September 1, 2007, the alleged onset date; (2) plaintiff had not engaged in substantial gainful activity since the alleged onset date; (3) plaintiff's asthma, morbid obesity, anxiety, depression, and cannabis abuse were severe impairments within the meaning of the Regulations; (4) plaintiff's allergic rhinitis, migraine headaches, abdominal pain, autism, and agoraphobia were not severe impairments; and (5) the severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 12-13.

At step four, the ALJ determined that Charles retained the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can understand, remember and carry out simple instructions and make simple work related decisions. Can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time

> deadline. Can tolerate occasional interaction with coworkers, supervisors and the public. Can tolerate occasional changes in work setting. Cannot tolerate high volume output, very short deadlines, or high levels of precision. Occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions.

R. at 14-15.

The ALJ determined that Charles had no past relevant work. R. at 18. However, based on the testimony of the Vocational Expert, the ALJ found that plaintiff could still perform such representative jobs as "marker II," "photocopying machine operator," and "warehouse checker." *Id*. at 18. Because these jobs existed in sufficient numbers in the national economy for a person of plaintiff's age, experience, education, and RFC, the ALJ concluded that plaintiff was not disabled during the relevant time period. *Id*. at 18-19. Accordingly, the ALJ denied plaintiff's application for benefits. *Id*. at 19.

### D. Charles's Appeal

Plaintiff contends the mental component of the RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the medical opinion of David Haswell, M.D., plaintiff's treating physician. Pl.'s Mem., Dkt. No. 10 at 12. As plaintiff explains, the ALJ mistakenly referred to the medical evidence from Dr. Haswell's office as being attributable to "Melissa Jarvis," Dr. Haswell's Medical Office Assistant. *See id*.; R. at 419. According to plaintiff, the ALJ would almost certainly have treated this medical evidence differently if he had understood it came from Dr. Haswell himself. Pl.'s Mem. at 12-13.

The Commissioner responds that, regardless of its authorship, the ALJ properly evaluated the medical opinions from Dr. Haswell's office. Def.'s Opp'n, Dkt. No. 13 at 4-5. As defendant points out, the ALJ correctly referred to these medical records and the

associated medical source opinion as being from Charles's "primary care provider."  *Id*. at 6; R. at 16.  According to defendant, the ALJ permissibly discounted the findings from Dr. Haswell's office even though he may have mistakenly referred to them as coming from Ms. Jarvis.  *Id*. at 6-10.

Upon careful review of the record, remand is warranted to ensure that the ALJ applied the correct legal standard to this medical evidence.  On January 18, 2017, the Social Security Administration revised the rules regarding the evaluation of medical evidence.  *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 n.4.  Among other things, the Administration eliminated the so-called "treating physician rule."  *Id*.

However, for benefits claims filed before March 27, 2017, the old regime still governs.  Under the pre-March 2017 system, the Regulations divide evidence from a claimant's medical sources into three categories:  (1) treating; (2) acceptable; and (3) other.  *Samantha S.*, 385 F. Supp. 3d at 183.  "The most important of these is the treating source category, which includes a claimant's own physician, psychologist, or other acceptable medical source who has provided 'medical treatment or evaluation and who has, or has had an ongoing treatment relationship with the claimant."  *Id*. (cleaned up).  "The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Id*.

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."  *Samantha S.*, 385 F. Supp. 3d at 183-84 (citation omitted).  "And when a treating source's opinion contradicts other substantial evidence in the record, such as the

- 8 -

opinions of other medical experts, an ALJ may afford it less than controlling weight." *Id*. at 184. "In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when:  (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where it appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (cleaned up).

When an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case.  20 C.F.R. §§ 404.1527(c), 416.927(c).

In short, this recitation of law demonstrates that the pre-March 2017 Regulations assigned significant importance to a medical provider who qualified as a claimant's "treating source."  As the Commissioner acknowledges, Charles's claim is subject to this older iteration of the Regulations, since it was filed on April 18, 2016.  Def.'s Opp'n at 5 & n.3.

The Commissioner also concedes the ALJ "did not discuss the treating physician rule when evaluating" the December 2018 mental health questionnaire from Dr. Haswell's office.  Def.'s Opp'n at 7.  Even so, defendant argues, the ALJ did in fact discuss the questionnaire at issue and applied the substance of the treating physician rule even if he did not explicitly make reference to it.  *Id*. at 7-8.  Thus, in defendant's view, the ALJ's erroneous

reference to Ms. Jarvis is nothing but harmless error. *Id*.

This argument has some force. After all, courts do not require ALJs to "mechanically recite" all of the various Regulatory factors underpinning the treating physician rule as long as it is clear from a review of the record that the ALJ properly considered them. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order). It is also true that courts often find an error like this (*i.e.*, an ALJ's mistaken reference to a different medical provider) harmless where it is clear from the record that the mistake did not change the outcome. *See Ortiz v. Colvin*, 298 F. Supp. 3d 581, 591 (W.D.N.Y. 2018) (collecting cases).

The problem in this case is that the nature of the ALJ's mistake suggests it may have actually impacted his legal analysis and therefore the outcome. The ALJ refers to Ms. Jarvis as a "CRNP," or "Certified Registered Nurse Practitioner." R. at 16. This appears to have been a reasonable guess on his part, since the December 2018 medical source statement includes a notation explaining that, where the document is completed by a nurse practitioner or social worker, a supervising physician must also sign off on it. *Id*. at 444. And there are two signatures on the form. *Id*.

Nurse practitioners are not considered "acceptable medical sources" and therefore cannot be considered "treating sources" under the pre-2017 Regulations. *See, e.g.*, *Wider v. Colvin*, 245 F. Supp. 3d 381, 388-89 (E.D.N.Y. 2017). The Commissioner argues that this is a distinction without a difference, since the ALJ identified Ms. Jarvis as plaintiff's "primary care provider." Def.'s Mem. at 7 (citing R. at 16). According to defendant, this "rebuts" Charles's claim that the ALJ considered Ms. Jarvis to be a "non-medical source." *Id*.

The Court disagrees. It is not unheard of in this Circuit for a non-acceptable medical source, such as a nurse practitioner, to be the primary (or perhaps only) treatment provider a

claimant sees on a regular basis. So it is sometimes possible that a claimant has a "primary care provider" who does not qualify for the historical deference enjoyed by a treating physician under the pre-March 2017 Regulations. *See, e.g.*, *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (explaining that a nurse practitioner with a primary treatment relationship with the claimant is still entitled to "some extra consideration").

But even putting that issue aside, incorrectly identifying Ms. Jarvis as a nurse practitioner only compounded the problem. As far as the Court can tell, Ms. Jarvis is not a medical provider at all—she is Dr. Haswell's office assistant. The need for the ALJ to clarify this confusion is particularly acute because Dr. Haswell is the physician who appears to have the most extensive treating relationship with Charles. *See* R. at 442 (describing "frequency and length of contact" with claimant as "monthly, been seeing [patient] for years").

Thus, an error in evaluating Dr. Haswell's medical opinions and treatment records would be the sort of mistake that may actually have a real impact on the outcome of this disability case. *Gulczweski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 498 (W.D.N.Y. 2020) (citation omitted) ("The expert opinions of a treating physician are of particular importance to a disability determination.").

For instance, this case is unlike *Ortiz*, where the ALJ's apparent confusion ran in the other direction. In *Ortiz*, the ALJ mistakenly attributed the RFC opinion of a certified nurse practitioner to her supervising physician. 298 F. Supp. 3d 590-91. Under those circumstances, the court found that any error was harmless because the ALJ had clearly applied the more demanding treating physician standard when partially discounting this medical opinion. *Ortiz*, 298 F. Supp. 3d at 591.

Of course, Dr. Haswell appears to be a family physician as opposed to a psychiatrist

- 11 -

or psychologist, which means that his opinions about the nature and extent of Charles's mental limitations might be entitled to lesser overall weight in the disability analysis. *See, e.g.*, *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 202 (N.D.N.Y. 2012) (Sharpe, J., adopting Report & Recommendation of Bianchini, M.J.).

However, the Court is not satisfied on the existing evidentiary record that the ALJ understood (1) that the December 11, 2018 medical source statement bore the imprimatur of Dr. Haswell, plaintiff's long-time treating physician or, relatedly, (2) that this medical source statement was not completed by a nurse practitioner, a source that would not be considered "acceptable" under the relevant iteration of the Regulations. *See, e.g.*, *Gualano v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 353, 361-62 (W.D.N.Y. 2019) (rejecting harmless error argument where ALJ's discussion of the contested evidence "provide[d] no insight into whether the ALJ recognized" that the opinion was rendered by the claimant's treating physician). Accordingly, this matter must be remanded for further administrative proceedings.

## IV. <u>CONCLUSION</u>

Because a remand is warranted for further consideration of the medical opinion evidence, it is unnecessary to reach the remaining arguments. *Gualano*, 415 F. Supp. 3d at 363 (finding same). This case will be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's decision is VACATED; and

4. This matter is REMANDED for further administrative proceedings.

The Clerk of the Court is directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated: November 20, 2020
       Utica, New York.

_____
United States District Judge